I may have pleased the court. My name is Daniel Perez. I represent Albert Santana. I want to begin this morning by emphasizing the importance of Anthony Edwards to the state's case. Because the place that the county court got it most wrong in the opinion denying the 440 was to characterize Edwards as somehow a cumulative witness. That was absolutely wrong. Well, he was cumulative on the license plate. That's correct, Judge. You're absolutely right. But what he was not cumulative on was the most important fact of all, that Anthony Edwards was the sole solitary eyewitness who pointed at Albert Santana and said, that is the man who shot and killed Daquan Phillips. No other witness put Santana at the scene of Phillips' shooting. And if you unpack the reasons for the county court's decision for characterizing him as a cumulative witness, they don't withstand the weight. The county court relied on the testimony of Yaquid Williams. Now, this was the first shooting. Williams was the person who claimed that Santana had shot at him after trying to rob him. Yet, the county court ignored the fact that Kristen Moore contradicted Williams' testimony. Kristen Moore, who was at the scene of the 628 Gifford shooting, said that the shooter was close enough that she could have kissed him. And she looked at Santana and she said, that is not the man who fired the gun at 628 Gifford. The gun, by the way, which the ballistics evidence showed, was the same gun that was used to shoot and kill Daquan Phillips. I'm not sure I follow you. I don't understand how any of this seriously undermines the confidence in this man's conviction. There were the shell casings. There were the witnesses that put him in the car. Well, with all due respect, Your Honor, there are not witnesses that put him in the car. There was evidence that the night before the shooting, Santana had gone to the general area in a rented black Ford pickup. Not the blue Ford Taurus that everybody saw, but he was in a rented black Ford pickup. Fifteen minutes after the second crime, the blue Ford Taurus was stopped and Santana's co-defendants, McKnight and Edwards, excuse me, McKnight and Alexander, were in the Ford Taurus, but Santana was not, and nobody said anything about a black Ford pickup. Here's another issue that I'd like to focus the court on. But another witness testified that your client confessed to the murder in his cell, and Williams placed him in the car. Yes. And this was a felony murder charge, so maybe what the court meant in saying it was cumulative is the fact that this was the only witness, Edwards was the only witness who testified, that I saw this man shoot the victim was not the most salient, was not necessary for the felony murder charge. In order to have a fair and balanced review of this evidence, you have to take into account Kristen Moore. With respect to the jailhouse informant, Tyree Allen, Tyree Allen claimed that Santana confessed to both shootings.  But it was not as though this jury found Santana guilty across the board. The jury acquitted him of attempted murder of Yaquid Williams, acquitted him of reckless endangerment of Yaquid Williams, but convicted him of the attempted robbery of Yaquid Williams. So this jury already had some concerns about the people's case. But to characterize Edwards as somehow a cumulative witness misses the point. He is the only witness who puts Santana there, the only eyewitness. If you take him out of the equation, you are left only with Yaquid Williams who said, I was smoking marijuana that night, I was dealing marijuana that night. He had a pending court case, and the jury clearly rejected his testimony. I mean, we can't know exactly what was in the jury's mind, but the jury did not convict Santana of the attempted murder of Williams. And you're left with the testimony of the jailhouse informant, who was waiting for sentencing and started his testimony by saying, I'm hoping to get a more lenient sentence. Well, we know that the jury rejected at least half of his testimony because he claimed that Santana fired the gun at 628 Gifford as well, and the jury acquitted Santana of that. What is the basis for saying that the impeachment material wasn't turned over? I mean, the government was forthcoming with other impeachment material. Correct me if I'm misunderstanding the record, but it's undisputed that they provided full criminal histories for Williams and for Allen. They came forward with the very damaging, from their perspective, exculpatory evidence with regard to the eyewitness more during the trial. So what's the basis for saying that this impeachment material wasn't turned over? It's important, first of all, to observe that the district attorney who handled this 440 motion, like the county judge who decided this 440 motion, had no involvement in Santana's trial. And I don't mean to heap unfair criticism on the county court judge. He didn't handle the original case. ADA White had no involvement in Santana's prosecution. She was looking at a cold file. And there was nothing in the file that said, nothing corroborating, nothing contemporaneous that says, in fact, on this date, I gave certain discovery to Santana's lawyer. Okay, nothing of the sort. What ADA White said was, I believe this material was given to Santana because the only two sources of information were certificates of conviction and a rap sheet. Well, I've looked at the file, and there are no certificates of conviction from Florida. There is, however, a rap sheet. Therefore, the information must have come from the rap sheet. Where the county court got it wrong, and where ADA White got it wrong, was they did not take into account this what-he's-provided document or documents. Okay, and that was a third and independent source of information from which Santana's lawyer could have derived the information about all of these witnesses that Your Honor is referring to. Okay. Including the pending felony charge in New York? Well, he was not asked. I don't know. We don't have in the record, unfortunately, although we have it now, but we don't have in the record what was in this what-he's-provided document. Okay. ADA- We don't have a name of it? We don't know what's in it? That's in the record. If you look at the record that was presented to the county court, nobody gave the county court either the what-he's-provided document or, for that matter, the rap sheet. Okay. And that was one of the failings of ADA White's presentation to the county court, was it was a bare affirmation. There was no documentation, no rap sheet, no what-he's-provided document, no affidavit from either of the prosecutors who had prosecuted Santana. And the county court even rejected an argument that Santana didn't even raise. The county court spends considerable time in its opinion saying there is no evidence in the record to suggest that Edwards cooperated or cut some sort of a deal with the prosecution. Well, Santana never made that argument. It was direct appeal, and we were, you know, the appellate division or something like that. We would, I mean, your comments would have more currency, but isn't this court obligated to give those findings at predeference? Not where I can point to the record and show here are facts that the county court didn't advert to, and I'll use Fuentes v. Griffin as my touchstone. That's always the case. It's not always the case, Your Honor. If you look at Fuentes, Fuentes talks about significant or major red flags that the county court or that the state court didn't take into consideration. That's this case. You don't take into consideration the witness who says, I was close enough to kiss the shooter and it was not Santana. That's nowhere in there. You don't take into consideration the fact that the jury acquitted Santana of attempting to murder Akeed Williams. You don't take into consideration all of these facts that are in Santana's favor. And again, I don't mean to unfairly criticize the state court, but the state court was not familiar with this case. ADA White was not familiar with this case. It was a large record. It was a complicated case. There were two different shootings, and they just missed all of these salient facts. So is this, from your point of view, a case of actual innocence? I'm not arguing actual innocence, nor do I think I need to argue actual innocence. What I'm arguing under Kyle's is that there is reason to lack confidence in the verdict, because the only eyewitness was not impeached with this incredibly important impeachment material. We're talking about not just old information, okay? We're talking about information that was months old, three months before or four months before. Counsel, you will concede, I know, that if defense counsel had this, he could have made a strategic decision not to annoy Edwards further, since he seemed to get hot under the collar by the questioning about Florida. It could have been a strategic decision. Absolutely not, Your Honor. I don't concede that at all. At the point, he asked him about Florida at the beginning, at the opening of his examination. What set Edwards off was questions about what time and when he spoke to the police following the shooting. Okay, that's what set him off. But once he says, that's the guy, that's the guy who did it, now you might as well use everything that you have, because you now have one eyewitness, only one eyewitness, who's pointing at your client saying, that's the guy who did it. He made a strategic decision before he blurted out the identification. There would be no strategic justification after. None whatsoever. Again, we're talking about four felony charges, two separate arrests, that took place, crimes that took place within a year of when Albert Santana went to trial, in the same county, and Edwards pled guilty to a felony in the same building. He was prosecuted by the same prosecutor's office. What conceivable strategy would there be? Your position is, if the jury had heard that information, it necessarily would have either disregarded or discredited his identification of your client. I'm saying that this court, that any reviewing court, should lack confidence that there is a reasonable probability in a different result if this critical impeachment evidence comes in to the trial. All right, you've reserved two minutes for rebuttal. Thank you. We'll hear from the government. Thank you very much. Good morning, Your Honors. Allison Gill for the superintendent. There was substantial evidence supporting the state court's finding that the prosecutors disclosed to defense counsel the rap sheet of Anthony Edwards. Put the microphone right in front of your face. I'm sorry. Said that the prosecutors disclosed the rap sheet which contained his recent New York cases. The trial court ordered the prosecutor to provide defense- So it wasn't in the file. Counsel said it was not in the file now, the rap sheet, right? Well, the rap sheet is not part of the record. Well, it's not part of the record. It's not part of the record, but in response to the 440 motion, the ADA who handled the motion represented that she had the rap sheet in the file. She did not have any certificates of conviction from Florida, and that therefore the questioning of Edwards about his Florida cases could have necessarily only come from the rap sheet itself. In addition- And the trial court had ordered the prosecutor to turn over the certificate of conviction or the rap sheet. Yes, yes. And in addition to that, one of the ADAs who handled the case recalled that they weren't able to get any certificates of conviction from Florida, and so they necessarily had to rely on the rap sheet which, again, was in the district attorney's file. There's no representation that there's in the file a rap sheet with a cover letter on it to the defense counsel saying we are hereby turning this over. No, there isn't that, but you do have questions. You know, defense counsel asked Edwards questions about his Florida cases. There was no other source of information where that could have come from other than the rap sheet. Now, when Mr. Perez is talking about what he's provided document, that's an abstract with a witness's name, date of birth, criminal convictions, and pending charges. That didn't become an issue until Mr. Perez made that an issue here. But what happened at trial, defense counsel said, this judge, this doesn't comply with the statute. And the judge told the prosecutor, give him certificates of conviction or a rap sheet. So there's no reason to believe that the prosecutor didn't comply with that. I mean, the prosecutor, as you pointed out, turned over all other impeachment material. He's the one that told defense counsel that Kristen Moore told me after her testimony that this was not the shooter. So there's no reason to think that the prosecutor would somehow just withhold these recent New York cases. And also, Edwards' testimony was really not material. It was cumulative. He was called because he wrote down the license plate number of the blue Ford Taurus. He saw it at the time of the crime. He called the police right after it happened, said, here's the license plate number. I don't want to be involved. Leave me out of it. Unfortunately, he was involved. And this happened all before he was arrested, all before this possession of stolen property. And the fact that he identified the defendant as the shooter, first of all, happened on cross-examination, not on the prosecutor's direct. And first, defense counsel did try to ameliorate that. He moved for a mistrial, saying, I didn't receive notice of the ID. And the judge said, well, there was no out-of-court ID. You're the one that elicited the ID. On cross, he became a pretty important witness when he identifies the defendant as the shooter. Right. Although it actually is not that significant because the defendant was convicted of felony murder. He wasn't convicted of actually being the shooter. He just had to be part of the robbery in which someone was killed. Still a deeply incriminating testimony. And this would have been pretty substantial impeachment, right? These are charges that are pending in the very courthouse where the witness is testifying. So you could imagine a line of cross-examination that would be pretty important. Don't you have a motive here to color your testimony, to offer testimony to aid the prosecutor? I'm sorry. When at this testimony, these particular charges would have been very helpful in cross-examining the fact that there were charges pending against the witness in the very courthouse in which he was offering his testimony. Well, it could have been useful. I mean, defense counsel had the charges on the rap sheet. The witness repeatedly said, I have a lawyer and my lawyer told me I don't have to get involved. And defense counsel didn't say, what do you have a lawyer for? He chose not to ask him these questions. This was a tactical decision. So he could have asked more, but he chose not to. There would be no tactical basis not to pursue this, as counsel pointed out, after he blurted out the ID. I disagree, Your Honor. I think at that point, he was more concerned with the ID than the fact that he had a pending possession of criminal, of stolen property charges. To a forciari, he had to impeach after the ID, correct? Yes, and he asked him many questions about, did you ever provide the police with a description? Did you provide the grand jury with a description? Did you provide the prosecutor with a description? What about impeaching him on the pending charges in New York? Right, but that, again, was not a very significant charge. It was a possession of stolen property. Counsel cross-examined him with the much more serious allegations. Weren't you arrested for sexual assault? The ones from Florida. Yes, and those- New York charges were less serious, but they were newer. They were newer, right. They were very recent, in fact. He had pled guilty, and he was paying restitution, and he wasn't sentenced for a year after this trial was over. So they were pending. Why do you think there was sufficient evidence here to convict for a felony murder? Well, first of all, you have two crimes that occur very close to each other, I think a few miles apart, 15 minutes apart. You have three independent witnesses who saw the license plate number, three witnesses that have nothing to do with each other, and they all wrote down the license plate number. Two of those witnesses got in touch with the police right away. You have Petitioner's own statement that he participated in this robbery that came in through the jailhouse informant. And you also have Yaquid Williams, who testified as to the first robbery, an attempted murder, saying that that was a robbery as well. And although the jury acquitted him of the charges with which he was required to be the shooter, there was certainly enough. They convicted him of the attempted robbery of that case as well. So they obviously believed at least some of his testimony. So you have Petitioner's own statements. You have the fact that he's one of the three participants in the car. It is his car. And you have Yaquid Williams' testimony, as well as the shell casings and the ballistics evidence. So there's certainly more than sufficient evidence to find that he was a participant of that second robbery and therefore was guilty of felony murder, because there's no question that the victim was killed. Okay? You argued in a 28-J letter- Yes. I received yesterday that the ineffective assistance is waived because it was unexhausted. And yet, didn't you waive the waiver by bringing it up at this point in the process? Did you waive your right to pursue this? I'm sorry. I apologize for bringing that up at this late date. I realized as I was preparing for argument that his ineffective assistance of counsel claim is unexhausted, because he made clear in his leave application that he wasn't raising it indefinitely. My question to you is, did you not waive the right to bring it to us sooner, because you just missed it? I missed it, but I think what's more important is that the statute does not permit a habeas court to grant relief on an unexhausted claim. And so the court may consider it waived, but I think that- Are you saying it's jurisdictional? It's not jurisdictional. You have to argue it to us, and you didn't argue it to us, except in this misnamed 28-J letter. I apologize for that, but when I realized that it was unexhausted, I thought it was important to bring it to the court's attention, because I think the statute does limit a court's authority to grant relief on an unexhausted claim. Are you saying it's jurisdictional? It's not jurisdictional, but the statute said you can review an unexhausted claim. The statute says you can't grant relief on an unexhausted claim. And for those reasons, I ask you to affirm the denial of the writ. Thank you. Thank you. Mr. Perez, you have two minutes for rebuttal. The state submits a 28-J letter 37 hours before oral argument in this case, and the state submits 22 pages of critical evidence to me the night before they filed their brief. And we are proceeding under a facade with all due respect. There's not a rap sheet. There's two rap sheets. There's a rap sheet for New York and a rap sheet for Florida. There is so much about this case that is wrong. It should have been turned over to the 440 court. It wasn't turned over to the 440 court. And the state, in their brief, and even here today, can't argue their case without relying on extra record evidence. That what he's provided document is not a document. It's at least four sheets for different witnesses that have summaries that are not in the record, and yet here still today, the state stands before this court and says, well, these were abstracts with names and crimes. It's not in the record. They have no right to argue material that's not in the record. Lawyering that may not be perfect is not a constitutional violation. This is not not perfect, Your Honor. This is withholding material from a county court, withholding material from a magistrate judge, from a district. You're talking about the rap sheets. I'm talking about rap sheets, separate rap sheets. The prosecutor didn't turn it over. That's correct. I'm talking about. The court didn't make the prosecutor turn it over. Well, that's right. The court didn't, but the court didn't have any reason to believe. Forget about the rap sheets. Let's look at the what he's provided document. I mean, at least somebody could have looked at the trial's transcript and said, well, you know, the defense lawyer is standing here talking about some other material, complaining that it's not sufficient. What is that? Counsel complained to the judge that it was not sufficient. Yes. Yes. The judge didn't turn to the prosecutor and say, give them the material. Yes. The judge turned to the prosecutor and said, under the CPL, you have to give them either a rap sheet or a certificate of conviction. And your basis for saying that didn't happen is largely the fact that there was no cross-examination as to those charges. My basis for saying that is not only because there was no cross-examination, but also because I know it as a factual matter. As I'm standing here on February 17th, I have it in my hand. What is trial counsel? Did someone simply ask trial counsel what he or she got? No. That was not done. I mean, Mr. Santana, with all due respect. Who? Trial counsel? Yes, he is, as are both of the prosecutors. And Mr. Santana, who's serving a 40-year-to-life sentence in Greenhaven Correctional Facility, proceeded at all times pro se. No one suggested a hearing, bringing in the attorney? No. And again, I don't mean to heap unfair criticism on either the DA's office or the county court judge. They were doing difficult work. This was a complicated case with a 1,200-page trial transcript, and nobody had any direct involvement in this case, neither the prosecutor nor the county court judge. Thank you.